No. 15,970.

Ferguson *v.* The People.
(192 P. [2d] 523)

Decided April 5, 1948.

Mr. Philip A. Rouse, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr.

Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was returned guilty of second degree murder, perpetrated by committing an abortion, and sentenced to the penitentiary for a term of twelve to twenty years. To review that judgment he prosecutes this writ, complaining only of certain of the trial court's rulings on the admission of evidence. This complaint he divides into ten assignments. For obvious reasons we do not so separately examine these.

It is unquestioned that Rachel Salazar, hereinafter referred to as Rachel, defendant's alleged victim, died as the result of an abortion, unlawful if committed by defendant. His identification, the ultimate issue, depends upon the correctness of the court's rulings admitting the testimony of two witnesses and one exhibit.

Rachel was admitted to the hospital April 20. Two days later an operation was performed in an effort to save her life. April 27, Kingsley, a deputy district attorney, interviewed her. June 25, she died and the following day an autopsy was performed.

The identification of defendant (who was not a physician) as the person who performed the abortion rests upon what transpired at Kingsley's interview with Rachel and the admission of her statements, in the light of surrounding facts and circumstances, as a dying declaration. In answer to proper inquiries Rachel said she knew she was going to die and had lost all hope of recovery; that on April 14 preceding she went to defendant's apartment in Denver for the purpose of having the operation and that defendant performed it. Just what

he did she described in detail. Miss Rosin, a nurse, was present at the interview. She testified that Rachel was in a critical condition and otherwise corroborated Kingsley. The latter at the time made some written notes of the interview and this memorandum, Exhibit G, was admitted in evidence.

■ 1. The general rule concerning dying declarations and their admissibility in evidence, as it existed prior to the adoption of our statute on the subject, was discussed at some length by this court and that authority throws considerable light on the question here presented. *Reppin v. People,* 95 Colo. 192, 199, 34 P. (2d) 71. Three years after that decision was handed down our legislature passed a special statute on the subject, somewhat modifying the general rule. Laws 1937, p. 557, c. 145. A casual examination of these authorities will disclose conformity with the established rule as modified by the statute. The testimony of these two witnesses was properly admitted.

■ 2. Exhibit G appears to be a few scribbled notes on a printed form usually used by representatives of the district attorney's office in interviewing the reputed victims of unlawful abortions in cases when it is probable that dying declarations may be involved. In the instant case Kingsley was so convinced that Rachel was in extremis, and so fearful that she might die before the interview was terminated, he neither read the printed questions to her nor recorded verbatim her answers, nor requested her signature. So far as the exhibit discloses anything it conforms to Kingsley's testimony and it would probably be incomprehensible to anyone else. It would appear to be valueless save to call to the mind of the witness the ground he covered and the name of the nurse who was present and whose signature appears thereon. Why it was either introduced or objected to is a mystery, but its admission was not error. 30 C.J., p. 271, §508.

■ 3. To show scheme, or plan, or intent, on the

part of the defendant the people called the witness, Mrs. Wills, who testified that some two months prior to April 14, defendant had, under similar circumstances and by like means, performed an abortion upon her sister, which operation was followed by complications similar to those attendant upon the operation on Rachel. To all this counsel for defendant objected as improper evidence of other crimes, and so argues here. This evidence was properly limited by the usual instruction. No error was committed in admitting it. *Max v. People,* 78 Colo. 178, 240 Pac. 697. Moreover, by searching cross-examination of Mrs. Wills, and over strenuous objections by the district attorney, counsel for defendant himself obliged her to admit that she had employed defendant to perform a like abortion upon her.

Two additional observations seem pertinent. The lapse of time between the date of Kingsley's interview with Rachel and the date of her death casts no doubt upon her desperate condition when she was interviewed, for the record discloses that she never made any marked recovery. There was sufficient improvement at one time as to hold out some hope, but complications arose and she grew steadily worse until the end, and the undisputed evidence is that death was due to the abortion. Wigmore on Evidence, vol. 2 (1904 ed.), p. 1807, §1441. Defendant did not testify and no evidence was offered in his behalf.

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE HAYS dissent.