No. 25587

**The People of the State of Colorado v.
Tony Dale Mackey**

(521 P.2d 910)

Decided April 29, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendant-appellant Tony Dale Mackey was found guilty of first-degree murder in 1971 and was sentenced to life imprisonment. Mackey appeals from that conviction.

The testimony at trial indicated that on the night of January 16, 1971, the victim, Steve Brooks, and one Henry Brown were playing pool at the Park Hill Shine Parlor in Denver. As Brooks leaned over to make a shot, someone came in the door of the pool hall and fired two gunshots. Brooks fell to the floor and crawled toward a back room. Brown turned in the direction of the shot and saw the flame from the gun, but could not see who was holding it. As Brown ran from the hall he heard three more shots and three clicks which sounded to him like a gun misfiring. Sylvester Williams, an employee of the pool hall who was napping in the back room, testified that he heard gunshots, rolled off his cot, and hid beneath it. He further testified that shortly thereafter, Brooks came running into the room, fell on the floor and said that Tony Mackey shot him. Williams then testified that the defendant entered the back room and as Brooks was getting up and moving toward the door, Mackey fired an additional shot at Brooks. It was brought out on cross-examination that Williams had told the police a wholly different story prior to trial. Police Officer Shaylor testified that he found Brooks lying in a yard suffering from gunshot wounds. The officer testified that shortly after he kneeled beside Brooks, Brooks said, "I'm dying, I'm dying, my God, I'm dying. Hold my hand." The officer grabbed Brooks' hand and asked, "Who shot you?" Brooks replied, "Tony Mack." Brooks died later in the hospital of a gunshot wound.

Mackey alleges that the trial court erred (1) in denying defendant's motion for mistrial on the grounds that the court had no right to question the jury on *voir dire* as to its views on the death penalty, (2) in denying defendant's motion to strike the testimony of Officer Shaylor with respect to Brooks' dying declaration, and (3) in not declaring a mistrial

after one of the juror's rooms had been burglarized and the juror had conversed with a police officer during the sequestration. He also alleges that the verdict of first-degree murder in this case was not supported by the evidence; that the trial court failed to sufficiently advise the jury in its instruction on second-degree murder and erred in refusing defendant's tendered instructions. Further, Mackey alleges error in allowing a death qualified jury to be selected in this case. We find no reversible error was committed by the trial court, and we therefore affirm.

I.

Mackey assigns as error the trial court's denial of his motion for mistrial based on the grounds that the court itself asked questions on *voir dire* designed to qualify the jury for the death penalty. Defendant argues that such action on the part of the judge was in excess of his duties with regard to *voir dire* under Crim. P. 24(a)(1) which provides as follows:

Rule 24. Trial Jurors

"(a) *Challenges for Cause.*

"(1) Examination. The defense attorney or the defendant, if appearing pro se, and the prosecuting attorney shall conduct examination of prospective jurors. Prior to said examination the court may conduct a general examination of the prospective jurors. If in the opinion of the court the examination by the pro se defendant, the defense attorney or the prosecuting attorney is unduly repetitious, irrelevant, unreasonably lengthy, abusive, or otherwise improper, the court may limit such examination."

While Mackey concedes that at the time of this trial the district attorney might have been under some compulsion to death qualify the jury, he contends that the duty was that of the district attorney and not of the court. Defendant interprets Crim. P. 24 to mean that the questioning of prospective jurors as to their views on capital punishment is exclusively the province of the district attorney because such questioning is specific and personal with each prospective juror and is not general examination. He submits that the court, by asking such questions, improperly put itself in the

district attorney's place and thereby influenced and prejudiced the jury against him.

The record reveals that the judge asked certain questions ' of the jury panel as a whole, as well as of individual jurors. In addition to questions involving death qualification of the jury, the judge inquired as to possible hardship resulting from sequestration, prior jury service, whether the panel knew any of the witnesses and other pertinent matters. During this procedure, counsel were questioning the jurors as well.

We point out that the purpose of *voir dire* examination is to enable counsel to determine whether any prospective jurors ". . . are possessed of beliefs which would cause them to be biased in such a manner as to prevent his client from obtaining a fair and impartial trial." *Edwards v. People,* 160 Colo. 395, 418 P.2d 174. Although procedures to be followed in conducting the *voir dire* examination of prospective jurors vary considerably across the country, *see American Bar Association Standards of Criminal Justice Relating to Trial by Jury,* § 2.4, Comment (1968), Colorado by Crim. P. 24(a)(1) has chosen to provide that both the judge and counsel may participate in the examination. Defendant's argument too narrowly interprets the role of the trial judge under the rule. We hold that the trial judge may under this rule examine prospective jurors on any matter relevant to their competence as jurors. Under the circumstances of this case, the question covering the death penalty was a relevant one, and went to the general competency of the prospective jurors to serve in the case. We see no constitutional infirmity in the procedure.

II.

Mackey alleges next that the trial court erred in denying his motion to strike the dying declaration of Brooks, the victim, to Officer Shaylor because it did not meet all the requirements of C.R.S. 1963, 52-1-20. That statute provides: "52-1-20. *Dying declarations.* — (1) The dying declarations of a deceased person shall be admissible in evidence in all civil and criminal trials and other proceedings before courts, commissions and other tribunals to the same extent and for

the same purposes that they might have been admissible had the deceased survived and been sworn as a witness in the proceedings, under the following restrictions:

"(2) (a) To render the declarations of the deceased competent evidence, it must be satisfactorily proved:

"(b) That at the time of the making of such declaration he was conscious of approaching death and believed there was no hope of recovery;

"(c) That such declaration was voluntarily made, and not through the persuasion of any person;

"(d) That such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement;

"(e) That he was of sound mind at the time of making the declaration."

Defendant concedes that subsection (2)(b) was complied with, but contends that (c), (d) and (e) were not. A hearing was held in chambers to determine whether a proper foundation had been laid for the admission of Brooks' declaration. The trial judge found that all the requirements of the statute had been established.

■ The general rule as to determination of the sufficiency of the foundation proof which will allow dying declarations to be admitted into evidence is set out in *Wigmore on Evidence* § 1451 (3d ed.):

"(a) That the judge is to pass on the preliminary conditions necessary to the admissibility of evidence is unquestioned . . .

"(b) After a dying declaration, or any other evidence, has been admitted, the *weight* to be given to it is a matter exclusively for the jury."

■ Here, the judge ruled the declaration admissible, finding the statute was complied with, and we find no error in his decision. The fact that the declaration was in response to a question does not, as defendant suggests, violate either subsection (2)(c) or (2)(d) of the statute. *See Ferguson v. People,* 118 Colo. 54, 192 P.2d 523. It is the admission of declarations resulting from persuasion or leading questions that the statute seeks to prohibit. There is no evidence of

either of these elements here. The question "Who shot you?" was not suggestive, nor was there any indication that the response was involuntary. As to defendant's argument that Brooks' rationality at the moment was not established, we note that in arguing this motion the district attorney pointed to specific facts testified to which indicated sound mind and the trial judge found that Brooks was of sound mind at the time of making the declaration. We find that a sufficient foundation was laid, as required by C.R.S. 1963, 52-1-20.

### III.

 Mackey also assigns as error the trial court's refusal to declare a mistrial after one of the juror's rooms had been burglarized and the juror had briefly conversed with a police officer about the incident, in the presence of the night bailiff. The fact that a juror conversed with an unauthorized person during sequestration did not require the trial court to grant a mistrial *sua sponte* because the defendant made no showing that he was prejudiced thereby. The determination of whether prejudice has occurred is within the sound discretion of the trial court and only where that discretion has been abused will a new trial be ordered. *People v. Davis and Bender,* 183 Colo. 228, 516 P.2d 120; *Torres v. People,* 149 Colo. 314, 369 P.2d 80; *Moore v. People,* 125 Colo. 306, 243 P.2d 425. Mackey made no showing that he was prejudiced by this occurrence and we find no abuse of the trial court's discretion here.

### IV.

██ Defendant next argues that the verdict of first-degree murder in this case was not supported by the evidence, alleging that the People's evidence did not show the required elements of premeditation, deliberation and express malice. Whether or not express malice, premeditation and deliberation exist is a question for the jury to determine on all the evidence in the case. *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427; *Power v. People,* 17 Colo. 178, 28 P. 1121. Mackey contends that the only way in which the jury in this case could have drawn an inference of malice would have been through the

use of a deadly weapon and that inference could only legitimately be drawn as to second-degree murder.

It is, of course, the law in this state that the use of a deadly weapon, of itself, is not a sufficient basis for the jury to draw the inference that the killing was deliberate, premeditated and done with express malice aforethought. *Hervey v. People,* 178 Colo. 38, 495 P.2d 204; *Power v. People, supra.* However, in the instant case the evidence showed much more than the bare fact of killing with a deadly weapon. Evidence was adduced that as Brooks was preparing to take a pool shot, he was shot in the back. After being shot, the victim fell to the floor and tried to crawl to safety, but several more shots were fired at him. The defendant followed the unarmed victim into another room and, ignoring Brooks' plea for mercy, shot at him again. We find that, from the evidence establishing the circumstances surrounding the murder, there was sufficient evidence for the jury to return a verdict of first-degree murder.

## V.

Defendant also contends that the trial court failed to sufficiently advise the jury in its instructions as to second-degree murder. He argues that the judge, *sua sponte,* should have specifically advised the jury that a killing with a deadly weapon would, in and of itself, only support a finding of implied malice and not express malice, and suggests in his brief that the following instruction, approved in *Moya v. People,* 174 Colo. 435, 484 P.2d 788, should have been given:

"The Court instructs the jury that when a killing is done unlawfully with a deadly weapon, or weapon calculated to produce and actually producing death, malice may be legitimately inferred in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation or cause, and you may infer from such fact that the act was voluntary and committed with malice aforethought."

We note that at trial defense counsel neither tendered such an instruction nor requested that it be given. The ground asserted here was not raised in his motion for

new trial. Consequently, in the absence of plain error, we are not required to consider it here. *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346; *Mathis v. People,* 167 Colo. 504, 448 P.2d 633. We recognize that the court has a duty to fully instruct the jury on every issue presented whether requested to do so or not. The court here did give proper instructions on first and second-degree murder, as well as definitions of express and implied malice. Under the record in this case, ". . . it was the responsibility of defendant's counsel to request such instruction if he believed circumstances warranted, and having failed to do so, defendant cannot now complain that such instruction was not given." *Mickens v. People,* 148 Colo. 237, 365 P.2d 679.

## VI.

Defendant also alleges error in the trial court's failure to give his three tendered instructions based on his theory of the case that the prosecution's key witness, Sylvester Williams, was unreliable. Clearly, a defendant is entitled to an instruction on his theory of the case, *People v. Nace,* 182 Colo. 127, 511 P.2d 501, provided it is grounded in the evidence. *Payne v. People,* 110 Colo. 236, 132 P.2d 441. However, the instructions tendered here were covered by instructions the trial court gave on presumption of innocence, burden of proof, credibility of witnesses and use of prior inconsistent statements. It is not error to fail to give a tendered instruction covering the same matter already dealt with in other instructions, *Winters v. People,* 174 Colo. 91, 482 P.2d 385, and we find no error here.

## VII.

Defendant's contention that he was denied his right to an impartial jury because the jury was death qualified has already been decided adversely to him. Both the United States Supreme Court and this court have rejected the argument that death qualified juries are more prone to convict than to acquit. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *Carroll v. People,* 177 Colo. 288, 494 P.2d 80; *Padilla v. People,* 171

34

Colo. 521, 470 P.2d 846; *Hampton v. People, supra.* The additional studies that defendant has submitted are not persuasive.

Accordingly, we affirm.