**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Kenneth E. SMITH,
Defendant-Appellant.**

**No. 82CA1428.**

Colorado Court of Appeals,
Div. II.

July 5, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Cecil L. Turner, Pueblo, for defendant-appellant.

BERMAN, Judge.

Defendant, Kenneth E. Smith, appeals his conviction by a jury of one count of a drug offense concerning the sale of methaqualone and one count of conspiracy. We affirm.

Testimony at trial revealed the following series of events.

On March 4, 1982, defendant was in a bar in Lamar, seated at a table with three other persons. One of the proprietors, a Mrs. Camp, overheard the defendant making a drug sale to one of the other parties seated at the table and observed an exchange of pills for money. Mrs. Camp approached the group; asked the individual between whose legs she had seen the pills dropped to stand; and pulled up that individual's chair by the back, causing the pills to fall to the floor. All but one of the pills were quickly picked up by the group; the remaining pill was retrieved by Mrs. Camp. A chemical analysis of this pill confirmed that it was methaqualone, commonly known as a "Quaalude."

A brief conversation then ensued between · Mrs. Camp and the defendant, wherein Mrs. Camp expressed her disapproval of defendant's sale of drugs in her place of business. Defendant then apologized to Mrs. Camp and left the bar.

Mrs. Camp called the police and a warrant was issued for defendant's arrest. On March 22, 1982, a Lamar police officer arrested defendant, and later that day, defendant gave a written statement to a detective, in which defendant admitted attempting to pass six Quaaludes to his acquaintance at the Lamar bar.

Defendant testified at trial that the pills he had given to his friend in the bar came from the friend's van and that he was unaware that they were illicit drugs. Defendant's conviction and this appeal followed.

I.

■ Defendant's first contention on appeal is that the affidavit for his arrest warrant contained false information and that striking that information rendered the affidavit insufficient to establish probable cause for the issuance of a warrant. On this basis, defendant argues that the seized pill and his subsequent statement should have been suppressed. We disagree.

In the affidavit, the affiant, Detective Hollar, stated that the "tablet was given by [Mrs. Camp] to the affiant." In actuality, as Detective Hollar testified at the suppression hearing, the tablet was initially given by Mrs. Camp to another officer at the scene and Detective Hollar obtained it from the police department's evidence locker. Based on the detective's testimony, the trial court struck the inaccurate statement from the affidavit, but found that:

"The striking of that sentence in itself does not render the Affidavit lacking in probable cause."

Under the "totality of circumstances" test established by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this court in *People v. Gallegos*, 680 P.2d 1294 (Colo.App.1983) and *People v. Sullivan*, 680 P.2d 851 (Colo. App.1984), we agree with the trial court's conclusion that the remaining facts set forth in the affidavit establish probable cause sufficient to support the issuance of the arrest warrant. It is no longer neces-

sary to follow the tests established by the cases of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Gates* did *not* merely "refine or qualify" the *Aguilar-Spinelli* two-pronged test; rather, *Gates* rejected that test as "hypertechnical." *Massachusetts v. Upton,* — U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Therefore, the court was correct in refusing to suppress the seized pill and defendant's statements.

## II.

Defendant's second contention is that the trial court erred in denying his pre-trial motion for a continuance to locate several defense witnesses and to raise the money to pay for one of the witnesses to return to Colorado from the State of Washington. In addition, defendant contends that, in view of the fact that he was served with a petition to revoke his deferred sentence, to which he was subject as a result of a prior offense, on the first day of trial and in view of his resultant emotional state, the court erred in denying his motion for continuance on that day. We disagree.

■ The decision to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be disturbed on review absent an abuse of discretion. *People v. Mann,* 646 P.2d 352 (Colo.1982). Here, there was no such abuse by the trial court.

■ *People v. McCabe,* 37 Colo.App. 181, 546 P.2d 1289 (1975), cited by defendant, does not support his contention of abuse of discretion. In *McCabe,* we held that the State is obligated, under certain circumstances, to pay the costs of securing testimony from out-of-state witnesses and to grant a continuance for the purpose of securing such testimony. However, under *McCabe,* there are two prerequisites to a defendant claiming the benefits of such a rule. First, "a defendant must establish his indigency to the satisfaction of the court"; second, there must be a showing that the testimony of the witnesses sought

is "material and essential to the defense," *McCabe, supra.*

■ Here, neither prerequisite was met. Defendant did not establish indigency status; rather, for the record, it was noted that defense counsel was employed and not appointed. As to the "material" or "essential" nature of the testimony of the witness from Washington, defendant argued that the witness would have refuted the existence of any pills. Since defendant testified at trial that he did give some pills to the witness, we cannot say that her contrary testimony regarding the nonexistence of the pills was in any way "material" or "essential" to defendant's defense. Hence, there was no error in denying the continuance.

## III.

■ Defendant's third contention is that, in violation of § 16–5–203, C.R.S. (1978 Repl.Vol. 8), no addresses were listed for the witnesses endorsed by the prosecution and that, therefore, the court erred in allowing these witnesses to testify. However, the trial court found that in a town of only 9,000 people, the defense should be able to locate the witnesses. Since the defendant has failed to demonstrate any prejudice or inability to contact witnesses which might have resulted from the prosecution's failure to comply with the requirements of the statute, such noncompliance does not constitute reversible error. *See People in Interest of B.R.M.,* 653 P.2d 77 (Colo.App.1982); *Goldsberry v. People,* 149 Colo. 431, 369 P.2d 787 (1962).

## IV.

Defendant next contends that the trial court erred in sustaining the prosecution's objection, on grounds of relevance, to evidence that, on the afternoon of the first day of trial, defendant was served with deferred judgment revocation papers. Defendant contends that such evidence was "crucial" to show that he was "threatened" or coerced into confessing to police at the time of his arrest. Again, we disagree.

A trial court has broad discretion in determining whether proferred evidence is relevant and that determination will not be reversed unless it is shown that there was an abuse of discretion. *People v. Lowe*, 660 P.2d 1261 (Colo.1983). Here, evidence of the actual service of process on defendant of deferred judgment revocation papers was irrelevant to the jury's determination of defendant's guilt or innocence on charges of conspiracy and possession or sale of a controlled substance. Further, it was no more than collateral in relationship to the issue of whether defendant's confession was induced by alleged threats of revocation of his deferred judgment. Thus, the trial court did not abuse its discretion in striking the evidence concerning service of the deferred judgment revocation papers.

### V.

Defendant next contends that, because of two instances of alleged prosecutorial misconduct, defendant's conviction must be reversed and remanded for a new trial. We disagree once again.

The first instance of alleged misconduct concerns the prosecutor's question to the defendant regarding whether he had been "arrested for a violation of probation." Since defendant was on "deferred judgment," rather than on "probation," such question was improper. However, defendant did not move for a mistrial on the basis of that question, and he has made no showing of any resulting prejudice. Further, the trial court sustained defendant's objection to the question and admonished the jury to disregard it, and it must be presumed that the jury followed the court's instructions. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981). Since no showing of prejudice can be gleaned from the record, we hold that the trial court did not err in failing, *sua sponte*, to declare a mistrial on the basis of the question at issue. *See People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974).

The second instance of alleged prosecutorial misconduct concerns the following comment in the prosecution's closing argument:

> "[T]he case here rests largely on who you believe. I believe Mrs. Camp."

Such an expression of a prosecutor's personal belief in the truth or falsity of testimony is improper. *People v. Swanson*, 638 P.2d 45 (Colo.1981). However, the jury was instructed that closing arguments were not to be considered as evidence, and it must be presumed that the jury heeded this instruction. *Gutierrez, supra.*

Furthermore, since this improper statement was an isolated incident, "in the context of the argument as a whole and in light of the evidence" it is highly unlikely that the prosecutor's comment contributed to the jury's verdict. *See People v. Gutierrez, supra; People v. Motley*, 179 Colo. 77, 498 P.2d 339 (1972).

### VI.

Defendant's final contention is that the trial court's answer, over defendant's objection, to a question from the jury during its deliberations was improper. Specifically, the jury asked:

> "On the verdict concerning unlawful sale, do we have to agree that he is guilty of selling, dispensing, distributing or possessing or can we find him guilty of just one? We are not clear on this."

The court responded:

> "[A]s indicated by the word 'or,' you are at liberty to find Defendant guilty of the offense charged on Count I if you find that the People have proven beyond a reasonable doubt the existence of any one or more of selling, dispensing, distributing or possessing a controlled substance."

Defendant argues that such a response by the court was improper because it failed to remind the jury of the requisite culpable mental state and because it failed to inform the jury of the option of finding defendant not guilty. We perceive no reversible error in the court's response.

"It is not improper to give additional written instructions after a jury has commenced its deliberations, where requested to do so by the jury in order that the jury may be fully instructed on the law of the case, providing that adequate safeguards are taken and that the instructions given properly state the law." *People v. Langford*, 191 Colo. 87, 550 P.2d 329 (1976). Here, the jury had previously been instructed as to the requisite mental state for the crime charged and as to the burden of proof imposed on the People. Hence, the court's instructions, when considered as a whole, accurately communicated the applicable law to the jury. Therefore, no error resulted. *People v. Langford, supra.*

Defendant's remaining contention of error is without merit.

Judgment affirmed.

SMITH and KELLY, JJ., concur.