The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Thomas P. THORNTON, Defendant-Appellant.

No. 82CA1003.

Colorado Court of Appeals, Div. II.

Sept. 12, 1985.

Rehearing Denied Oct. 17, 1985.

Certiorari Granted (Thornton) Jan. 21, 1986.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Andrew Loewi, Yvette P. Kane, Deputy Dist. Attys., O. Otto Moore, Asst. Dist. Atty., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Thomas P. Thornton, appeals a judgment of conviction entered upon a jury verdict finding him guilty of six counts of securities fraud. We affirm.

I.

Defendant contends that the trial court erred in denying his motion for severance from co-defendants Heller and Bragar. We disagree.

A.

■ Generally a motion for severance of defendants is addressed to the sound discretion of the trial court, *People v. Horne*, 619 P.2d 53 (Colo.1980), and, absent a showing of prejudice to the defendant, a denial of severance will not be reversed. *People v. Johnson*, 192 Colo. 483, 560 P.2d 465 (1977); *People v. Barela*, 689 P.2d 689 (Colo.App.1984). Severance is mandatory only if there is material evidence admissible against one but not all of the parties and if admission of that evidence would be prejudicial to those parties against whom the evidence is not admissible. *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979); *see* § 16–7–101, C.R.S. (1978 Repl.Vol. 8); Crim.P. 14.

■ Defendant argues that he and Heller asserted antagonistic defenses which created sufficient prejudice to interfere with defendant's right to a fair trial. The record does not support defendant's assertion.

Defendant relies on an instance during trial when Heller testified that he "was shocked" to discover while talking to one of defendant's customers in defendant's office, that the customer had not received an offering circular. However, upon further questioning at trial, Heller testified that he did not remember the customer making a statement to the effect that he had not received a circular before making the investment, but only that he did not have one with him at that time.

In addition, Heller, Bragar, and defendant all testified. All of the defendants agreed that it was company policy for every customer to receive an offering circular. Defendant testified that he did give every customer an offering circular, although he may not have written a receipt for each circular he handed out. Neither defendant, Heller, nor Bragar accused the other of wrongdoing. Both defendant and Heller agreed that Heller was defendant's supervisor.

### B.

■  Moreover, although the trial court admitted evidence regarding a number of counts in the indictment with which co-defendants Heller and Bragar, but not defendant, were charged, the trial court orally admonished the jury to limit its use of evidence regarding a particular defendant to only that defendant. A written instruction submitted to the jury also warned the jury to consider each count charged "a separate and distinct offense," and not to allow a guilty verdict against a defendant on one count to control the verdict as to any other count against that defendant or any other defendant.

There is a strong presumption that the jury followed the court's instructions, and there is no evidence from which to conclude that the jury was unable to limit its use of the evidence to its proper purpose. *See People v. Gonzales, supra.*

■  Furthermore, the jury found defendant guilty of six counts and not guilty of two counts. This bolsters the presumption that the jury was capable of following the court's instructions and in fact did separate the various offenses for which defendant was charged. *See People v. Heller,* 698 P.2d 1357 (Colo.App.1984) (*cert. granted on other grounds* April 15, 1985). Accordingly, we hold that the trial court did not err in denying defendant's motion to sever his trial from that of his co-defendants.

### II.

Defendant next contends that the trial court restricted his efforts to lay a sufficient foundation for his change of venue motion and impeded his ability to exercise intelligently his peremptory challenges by placing time restrictions on his voir dire examination. We disagree.

The purpose of voir dire is to determine whether any prospective jurors possess beliefs which would cause them to be biased to the extent of interfering with a defendant's right to receive a fair and impartial trial. *People v. Mackey,* 185 Colo. 24, 521

P.2d 910 (1974); *People v. Heller, supra.* Restrictions on the scope of voir dire, however, are within the discretion of the trial court, and absent an abuse of discretion, the imposition of such restrictions will not be overturned. *People v. Brake,* 191 Colo. 390, 553 P.2d 763 (1976); *People v. Saiz,* 660 P.2d 2 (Colo.App.1982).

Crim.P. 24(a)(2) provides in pertinent part:

"In order to eliminate undue delay, the judge may reasonably limit the time available to the parties or their counsel for voir dire examination."

■  Here, the three defendants were allowed a total of one hour to ask questions of prospective jurors. However, the one hour restriction applied only to opening voir dire and followed an extensive voir dire examination by the court. Furthermore, the entire voir dire process consumed over six hours of court time. From our review of the record, we are satisfied that the voir dire was conducted in a manner which did not affect defendant's intelligent exercise of peremptory challenges.

Likewise, we are unpersuaded by defendant's argument that the limitations imposed by the trial court on voir dire affected his attempt to lay a sufficient foundation for his change of venue motion.

■  In order to support a motion for change of venue, the defendant must demonstrate that publicity concerning his prosecution was so "massive, pervasive, and prejudicial" as to create a presumption that he was denied a fair trial, or that the publicity created actual prejudice or hostility towards the defendant on the part of the jury panel. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983). "The mere existence of extensive publicity, by itself, does not trigger a due process entitlement to a change of venue." *People v. Bartowsheski, supra.* An important criminal case will likely generate public interest and it is not unusual that the best qualified jurors will have heard or read something about the case. *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976). It is not necessary to require jurors to be totally unfa-

miliar with the facts of the case if they are able to lay aside the information and opinions they have received through pretrial publicity. *People v. McCrary, supra.*

Defendant does not argue that the publicity was so massive, pervasive, and prejudicial as to give rise to a presumption that his trial was unfair. Rather, defendant argues that there was insufficient time from which to determine whether pretrial publicity resulted in juror prejudice or hostility towards him.

■ The voir dire examination of potential jurors failed to establish any nexus between pretrial publicity and juror prejudice against defendant. Although each juror had heard of the business entity associated with the fraud, none were shown to have any preconceived opinion as to defendant's guilt. Moreover, defendant did not object to the time limitations imposed on voir dire during trial, nor does he point to any necessary questions or apparent problems that he was unable to pursue as a result of the trial court's time restrictions. The trial court, therefore, did not err in placing reasonable time limitations on defendant's voir dire examination.

### III.

Defendant also contends that the trial court erred in denying his motion for a new trial based on the jury's failure to adhere to the court's instructions.

### A.

Defendant first argues that the trial court erred in refusing to conduct an evidentiary hearing on jury misconduct based on allegations that, in violation of the court's orders, some of the jurors may have learned during deliberations, through the media, of co-defendant Swanson's guilty plea to securities fraud or of fugitive co-defendant Riley's capture in Florida. Again, we disagree.

■ A jury verdict may be impeached by affidavit where extraneous prejudicial information or other improper influence is brought to bear on the jury's deliberations,

so long as there is no inquiry into the mental processes of the jurors. *People v. Cornett,* 685 P.2d 224 (Colo.App.1984); *see* CRE 606(b).

■ However, "[i]n order to constitute grounds for setting aside a verdict because of any unauthorized or improper communication with the jury, it is incumbent upon defendant to show that he was prejudiced thereby, and that determination of whether prejudice has occurred is a matter within the sound discretion of the trial court." *Torres v. People,* 149 Colo. 314, 369 P.2d 80 (1962); *People v. Hunter,* 43 Colo.App. 406, 607 P.2d 1026 (1980).

■ Here, defendant Heller's attorney submitted an affidavit with his motion for an evidentiary hearing. Defendant joined in this motion. This affidavit revealed that some members of the jury had stated that they had learned of Swanson's plea or Riley's capture. All of these jurors, however, further stated that they learned this information only "after their deliberations were completed," or "at the conclusion of their deliberations." One juror, who stated that Riley's capture was mentioned during a break, stated that "it didn't affect the deliberations in any way." There was nothing in the affidavit which established that the extraneous information entered into the jury's deliberations or otherwise prejudiced the defendant. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion for an evidentiary hearing on this basis. *See People v. Heller, supra.*

### B.

■ Defendant further contends that the trial court erred in refusing to conduct an evidentiary hearing after being notified by one of the jurors that the jury misunderstood the court's instructions. We see no reason to depart here from the general rule that a jury verdict cannot be impeached by jury affidavits as to the misunderstanding of instructions or other matters which involve the subjective understanding of the jurors. *Martinez v. Ash-*

*ton,* 124 Colo. 23, 233 P.2d 871 (1951); *People v. Rodriguez,* 638 P.2d 802 (Colo. App.1981).

Judgment affirmed.

VAN CISE and KELLY, JJ., concur.