The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Vincent Scott VIGIL,
Defendant-Appellant.

No. 84SA529.

Supreme Court of Colorado,
En Banc.

April 14, 1986.
Rehearing Denied June 9, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Kenneth A. Padilla, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Vincent Scott Vigil, appeals his convictions after a jury trial in Jefferson County District Court of first degree sexual assault, § 18–3–402(2), 8 C.R.S. (1978), and commission of a crime of violence, § 16–11–309, 8 C.R.S. (1985 Supp.). The defendant also challenges the

sentence imposed for the convictions. We affirm the judgment of the district court.

The defendant was charged with sexually assaulting the eighteen-year-old female victim outside her home in Lakewood, Colorado, in the early morning hours of July 2, 1982. Between 4:00 and 4:30 a.m., the victim was awakened by a knock on her bedroom window. Outside the window was a man who told the victim that he was Scott and that her former boyfriend who was hurt was in Scott's jeep and needed her help. The victim associated the name and the voice of the man outside the window with the defendant, Vincent Scott Vigil. The victim knew the defendant well because he had been the roommate of her former boyfriend. Although the victim felt uneasy about the situation, she dressed, picked up a towel and wet washcloth, and went outside.

The victim recognized a jeep parked in front of the house as the defendant's. As she walked toward the jeep, the man identified by the victim as the defendant stepped forward from the shadows, put an arm around the victim's neck and a knife to her throat, and threatened to kill her if she screamed. The assailant forced the victim to the ground in the shadow of some nearby bushes and sexually assaulted her. During the assault, the victim screamed and the assailant choked her. When the victim screamed and struggled again, the assailant choked her into unconsciousness. The victim regained consciousness about a half hour later and woke her mother who called the police. The victim was taken to a hospital where medical personnel observed that her jaw was broken, that she had multiple small hemorrhages in the white portion of one eye and around her face and neck indicative of strangling, and that she had multiple abrasions on her head, neck, shoulders and one breast.

The defendant was tried on charges of first degree sexual assault, commission of a violent crime in connection with the first degree sexual assault, second degree assault, and a crime of violence in connection with the second degree assault. At trial, witnesses for the defendant testified that he was with friends until shortly before the assault and that he could not have been at the victim's home at the time the assault was committed. Through cross-examination of prosecution witnesses, defense counsel attempted to undermine the victim's identification of the defendant as the assailant.

The jury returned a verdict finding the defendant guilty on all counts except crime of violence relating to the second degree assault count. Because the district court determined that the verdicts on the second degree assault count and the count of crime of violence while committing second degree assault were inconsistent, it dismissed the second degree assault count. Judgments of conviction on the remaining counts were entered. The district court sentenced the defendant to a term of twenty-four years.[1]

## I.

Most of the defendant's assignments of error concern 1) the seating of the jury, 2) the conduct of the jury, 3) the conduct of the prosecution, and 4) the jury instructions given by the district court. We address these aspects of the trial in turn.

## A.

The defendant first argues that the district court erred in refusing to permit defense counsel, during voir dire, to ask potential jurors where they lived. While we agree that the court improperly precluded this line of inquiry, under the circumstances of this case the error was harmless.

■ Section 13–71–110(5), 6 C.R.S. (1973) provides:

---

1. The defendant challenges on appeal the constitutionality of the sentencing scheme that allowed the court to impose a sentence in the aggravated range of more than 12 but not more than 24 years. Because of the constitutional challenge, the case was transferred from the court of appeals to this court under sections 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

(5) The names of qualified jurors drawn from the qualified jury wheel shall be made available to the public and the content of juror qualification forms completed by the jurors shall be made available to the parties or their attorneys of record *unless the court determines in any instance in the interest of justice that this information be kept confidential or its use limited in whole or in part.* (Emphasis added.)

The juror qualification form "shall elicit the name, address of residence, and age of the prospective juror." § 13–71–108, 6 C.R.S. (1973). Thus, under section 13–71–110(5), this information should have been made available to defense counsel in the absence of specific reasons for keeping it confidential. Here, the jury commissioner denied defense counsel's request for the juror master list, and the district court during voir dire in the presence of potential jurors ordered counsel to desist from questioning jurors about their addresses. The court later told counsel that its decision was based on a general request by the chief judge of the district court not to require the disclosure of such information. The court stated that

We have had many requests from the jurors in this district not to have their addresses revealed in the course of the proceedings. The request has come from jurors—not these jurors, but from jurors generally, therefore, the Chief Judge has asked us unless there is some reason or necessity for having the jurors give their address, not to force them to give their home addresses.

This rule of practice conflicts with section 13–71–110(5), which provides that as a general rule information of the type sought by defense counsel should be available without restriction. In the absence of specific findings why the interests of justice in this case required that the addresses of jurors remain confidential, defense counsel should have been permitted to elicit the information on voir dire.

■ Reversal of the defendant's conviction on this basis is required, however, only if the error affected the defendant's substantial rights. Crim.P. 52(a). Because the defendant does not allege a deprivation of constitutional rights with respect to the voir dire, the defendant has the burden of showing prejudice. *Segura v. People,* 159 Colo. 371, 412 P.2d 227 (1966); *Gottfried v. People,* 158 Colo. 510, 408 P.2d 431 (1965); *Madrid v. People,* 148 Colo. 149, 365 P.2d 39 (1961).

■ As part of his allegation of prejudice, the defendant argues that the district court's refusal to permit defense counsel to ask the jurors where they lived created an "aura of fear" of the defendant in the minds of the jurors. This argument is pure speculation. The defendant also contends that the district court's action prevented him from identifying those jurors familiar with the locations relevant to the crime or the defense. However, the district court specifically stated that counsel was not prohibited from inquiring directly of any juror whether the juror was familiar with these locations, and counsel made several such inquiries. The defendant's assertion of prejudice in connection with the voir dire is not well-founded.

■ As part of his challenge to the jury selection process, the defendant also questions the refusal of the district court to dismiss for cause two jurors who indicated that their ability to be impartial might be affected by their relationships with law enforcement personnel. We have held that the decision to grant or deny a challenge for cause is a matter reserved in the first instance to the discretion of the trial court, and that the trial court's decision will not be disturbed on appeal absent a clear abuse of that discretion. *People v. Russo,* 713 P.2d 356 (Colo.1986); *People v. Abbott,* 690 P.2d 1263 (Colo. 1984); *People v. Taggart,* 621 P.2d 1375 (Colo. 1981). The ultimate test to be applied in determining whether a juror should be dismissed for cause is whether it appears that the juror would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court. *People v.*

*Abbott,* 690 P.2d at 1267; *People v. Wright,* 672 P.2d 518 (Colo. 1983).

█ Here, the defendant points out that the brother of juror Bobby Givens was a member of the Colorado Springs police department. In response to questioning by the court, Givens testified that he "might be inclined to give more weight to the testimony of the law enforcement people, based on the association." Givens also stated in response to questions posed by the prosecutor and defense counsel that his brother's being a police officer "subconsciously" might affect him. However, Givens also stated that he would be willing to follow the court's instructions on credibility, that consciously he would be able to follow the court's instructions, and that if he did so he could be "fair and impartial to both sides." The district court was persuaded that Givens could be fair and impartial, and denied the defendant's motion to have the juror dismissed for cause. While the court properly might have dismissed the juror, considering the entire testimony of Givens the court did not abuse its discretion in rendering a contrary decision. *See People v. Wright,* 672 P.2d at 521 (Colo. 1983); *cf. Blades v. DaFoe,* 704 P.2d 317 (Colo. 1985).

█ The evidence of potential prejudice or bias against the defendant on the part of Robert Schroeder, the other juror challenged for cause, is attenuated. The basis for the defendant's challenge to Schroeder was the latter's casual friendship with a Lakewood junior police cadet that he knew from a junior college class. Schroeder stated twice that his association with the police cadet "possibly" would affect him. However, Schroeder never suggested that the association would be prejudicial to the defendant. To the contrary, Schroeder stated that he would follow the court's instructions, that he would be fair to the defendant, and that he would not favor the prosecution over the defense. The district court did not abuse its discretion in refusing to dismiss Schroeder for cause.

**B.**

The defendant urges that reversal of his conviction is required because of the exposure of jurors to a dictionary, a bible, and a map drawn by a juror. The defendant also contends that the verdict was tainted by the coercion of one juror by the others.

█ In *Alvarez v. People,* 653 P.2d 1127 (Colo. 1982), we held that a juror's consultation of a dictionary in order to clarify a jury instruction was improper conduct calling for reversal at least where it is evident that the conduct prejudiced the defendant. *See also Niemand v. District Court,* 684 P.2d 931 (Colo. 1984). Here, the defendant contends that prejudice should be presumed from a juror's alleged reliance on a dictionary during deliberation on the verdict. However, in contrast to *Alvarez* and *Niemand,* the assertion in this case that a juror utilized a dictionary is based on a presumption. The only implications of use of a dictionary are in the affidavits of the defendant's mother and of an attorney present in the courtroom when the jury retired to deliberate. The affiants saw a juror carrying a book with the words "New World" on the cover. There is no conclusive evidence that the book was a dictionary, and more importantly, no evidence at all that it was consulted in connection with the jury's deliberation. The evidentiary foundation for a finding of actual prejudice or a presumption of prejudice is lacking.

█ The defendant's argument based on the reading of the bible by one juror to another in the jury room is also deficient in evidentiary support. The evidence concerning the bible is based entirely on a juror's affidavit that contains no indication of the substance or context of the reading. The district court found that no prejudice resulted from the bible reading. The determination that a defendant has not been prejudiced by alleged juror misconduct "is within the sound discretion of the trial court and only where that discretion has been abused will a new trial be ordered." *People v. Mackey,* 185 Colo. 24, 31, 521 P.2d 910, 914 (1974). In the absence of more specific evidence of the nature and

effect of the bible reading, we cannot characterize the district court's finding as an abuse of discretion.

▮▮ The defendant also cites as prejudicial juror misconduct the drawing of a map by one of the jurors familiar with the locations involved in the case and the juror's use of the map to illustrate his view that the defendant's alibi was insufficient. Through the use of the map, the juror apparently intended to show that it only would take a few minutes to travel from the home of one of the defendant's friends to the victim's home, instead of the twenty minutes testified to by a defense witness.

We do not approve a juror's imparting to other jurors information, based on his personal experience that finds no support in the evidence, concerning the times and distances relevant to a case. However, in this case, the challenged information illustrated evidence presented by the prosecution. Under these circumstances, we see no reason to disturb the district court's finding that the alleged juror misconduct did not result in prejudice to the defendant. *Cf. People v. Reed,* 42 Colo.App. 275, 598 P.2d 148 (1979).

▮▮ The final allegation of impropriety in the jury deliberations concerns the asserted intimidation of one juror by others. A juror stated in an affidavit that during deliberations when she persisted in her belief that the defendant was not guilty, she was "yelled at" by other jurors. The district court ruled that this allegation, absent some evidence of an improper threat, was not sufficient to impeach the verdict. Heated argument, even shouting, may be a normal part of the deliberative process of a jury. *United States v. Stoppelman,* 406 F.2d 127 (1st Cir. 1969), *cert. denied,* 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769. The district court was correct in ruling that such pressure is not the type of coercion that justifies impeaching a jury verdict.

### C.

The defendant argues that he was prejudiced by the alleged failure of the prosecu-

tion to provide the defense with a statement that the defendant gave to a police officer shortly after his arrest. The defendant also asserts that the prosecution's failure to collect potentially exculpatory evidence was prejudicial.

At trial, the arresting officer testified that the defendant told him that he returned home at 5:00 a.m. on the morning of the crime. The defendant testified that he returned home at 4:35 a.m. Defense counsel objected to the arresting officer's testimony, arguing that the officer failed to mention the statement when responding to questioning at a pretrial hearing, and that the prosecution had not disclosed the statement despite numerous requests for discovery. The district court allowed the testimony, finding that the arresting officer's failure to recount the statement at the preliminary hearing was a good faith mistake.

▮▮ The prosecution has a constitutional and statutory duty to disclose information to the defense. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *People v. McKnight,* 626 P.2d 678 (Colo.1981); Crim.P. 16(a)(II). Here, the question is whether the statement was "withheld" by the prosecution. The People note that the statement was included in the affidavits submitted in request for a Crim.P. 41.1 order and a search warrant, and that these documents were given to defense counsel at the pretrial hearing. The People also note that the statement was included in the rough notes of the arresting officer that became part of "the court record" on the day of the arrest.[2]

Our review of the record does not reveal whether the statement was given to defense counsel at the pretrial hearing or whether the arresting officer's notes were made part of the court record on the date of the arrest. However, it seems reasonable to assume that these documents were in the prosecution's file and that defense counsel had access to the file. At any rate,

---

**2.** It is unclear to us what the People mean by " 'the court record' on the day of the arrest."

in the absence of evidence that the statement could not have been discovered through the exercise of reasonable diligence by defense counsel in examining the court's or the prosecution's files, the conduct of the prosecution with respect to the challenged statement did not violate due process. Any undue surprise to the defense resulting from the officer's testimony could have been met, but was not, with a request for a continuance.

The defendant's contention that the prosecution failed to collect potential exculpatory evidence rests on the failure of the police to take photographs of the victim until several days after the crime was committed. As a result, the defendant asserts that he was denied the opportunity to attempt to prove that certain marks on the victim's body were bite marks that he could not have made.

 The factors relevant to determining whether loss or destruction of evidence by the prosecution violates a defendant's right to due process are: (1) whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence would have been exculpatory; and (3) whether the evidence would have been material. *See, e.g., People ex rel. Gallagher v. District Court,* 656 P.2d 1287 (Colo. 1983); *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980). We agree with the People that the evidence at issue here was not suppressed by the prosecution and that the evidence is of doubtful exculpatory value.

In *Gallagher,* we held that

when evidence can be collected and preserved in the performance of routine procedures by state agents, failure to do so is tantamount to suppression of the evidence and ... the state must employ regular procedures to preserve evidence which a state agent, in the regular performance of his duties, could reasonably foresee might be favorable to the accused.

656 P.2d at 1291. However, we also recognized that "police investigators have no general duty to search out possible exculpatory evidence or to perform tests to determine marginally relevant facts that, with the benefit of hindsight, a defendant might speculate would have been of possible value to support his defense against a criminal charge." *Id.* The significance of the marks on the victim's body was not so obvious as to require the police to photograph the marks immediately after the crime was reported. Furthermore, the defendant presented no evidence that the marks were bite marks, or that this fact could have been established if the photographs had been taken earlier. The defendant's speculation does not give rise to the requisite "reasonable possibility that the evidence could have been of assistance to the defense." *Morgan,* 606 P.2d at 1299.

## D.

The defendant asserts that the district court erred in refusing his tendered instruction on the credibility of eyewitness identification and in failing to instruct the jury properly on the charge of first degree sexual assault.

 In a number of cases we have held that it was not error to refuse a specific instruction on the credibility of eyewitnesses where, as here, the jury received a general instruction on the credibility of witnesses. *People v. Thatcher,* 638 P.2d 760 (Colo.1981); *People v. Palumbo,* 192 Colo. 7, 555 P.2d 521 (1976); *People v. Lopez,* 182 Colo. 152, 511 P.2d 889 (1973). The applicability of this rule to the facts of the present case is not affected by the defendant's claim that his "theory of the case" was mistaken identity.

The defendant further argues that his conviction of sexual assault as a class 2 felony is invalid because the jury was not instructed that the enhancement factors that raise the crime from a class 3 felony to a class 2 felony, as well as the elements of the crime of first degree sexual assault, had to be established beyond a reasonable doubt. Section 18-3-402(2), 8 C.R.S. (1978) provides: "Sexual assault in the first de-

gree is a class 3 felony, but it is a class 2 felony if: ... (b) The victim suffers serious bodily injury; or (c) The actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim." The district court instructed the jury on the elements of first degree sexual assault as set out in section 18–3–402(1), 8 C.R.S. (1978).[3] Preceding the paragraph defining the elements of first degree sexual assault was a paragraph that referred to the factors in section 18–3–402(2) that enhance the severity of the crime of first degree sexual assault.[4] In a separate instruction, the jury was told that the prosecution bore the burden of establishing beyond a reasonable doubt the elements of the crime. The enhancement factors also appeared on the completed verdict form that read as follows:

I. We, the jury, find the defendant, VINCENT SCOTT VIGIL, GUILTY of
(X) First Degree Sexual Assault
( ) Criminal Attempt, First Degree Sexual Assault
and further find
(X) That the defendant, Vincent Scott Vigil, was armed with a deadly weapon, and used the deadly weapon to cause submission of the victim....
(X) The victim suffered serious bodily injury.

**3.** Section 18–3–402 provides in part:
(1) Any actor who knowingly inflicts sexual penetration on a victim commits a sexual assault in the first degree if:
(a) The actor causes submission of the victim through the actual application of physical force or physical violence; or
(b) The actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats....

**4.** The full text of the first degree sexual assault instruction is as follows:
An actor commits the crime of First Degree Sexual Assault if:
The actor knowingly inflicts sexual penetration on a victim and he causes submission of the victim to said sexual penetration through the actual application of physical force or physical violence or causes submis-

( ) That the defendant, VINCENT SCOTT VIGIL, was not armed with a deadly weapon or did not use the deadly weapon to cause submission of the victim....
( ) That the victim, ..., did not suffer serious bodily injury.

Although the defendant asserts that he objected to the first degree sexual assault instruction at trial, nothing in the record indicates that his objection was even tangentially directed to the alleged error complained of here. Because vague and unspecific objections to instructions will not be recognized on appeal, *Cruz v. People*, 165 Colo. 495, 441 P.2d 22 (1968), we must determine whether the giving of the jury instructions at issue here constituted plain error. *Ramirez v. People*, 682 P.2d 1181 (1984); *People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972).

In *Beigel v. People*, 683 P.2d 1188 (Colo.1984), we held that the prosecution must establish beyond a reasonable doubt the enhancement factors listed in section 18–3–401(2) before a defendant may be convicted of first degree sexual assault as a class 2 felony. Viewing the instructions in this case as a whole, we are persuaded that the district court adequately explained to the jury the necessity of basing its findings concerning the enhancement factors on

sion of the victim by threat of imminent death, serious bodily injury, or extreme pain to be inflicted on anyone and the victim believes the actor has the present ability to execute these threats and the victim suffers *serious bodily injury. The actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim.*
The elements of First-Degree Sexual Assault are therefore:
(1) An actor
(2) Knowingly inflicting sexual penetration on a victim, and
(3) Causing submission of the victim to said sexual penetration
(4) Through the actual application of physical force, or physical violence, or
(5) By threat of imminent death, serious bodily injury, or extreme pain to be inflicted on anyone, and
(6) The victim believes the actor has the present ability to execute these threats.
(Emphasis added.)

proof beyond a reasonable doubt. Here, as in *Ramirez*, the only burden of proof mentioned in the instructions was proof beyond a reasonable doubt. *Ramirez*, 682 P.2d at 1184. Further, as already noted, the enhancement factors and the elements of first degree sexual assault were closely linked in the same paragraph of the instruction. Finally, the jury was instructed that use of a deadly weapon during the commission of first degree sexual assault must be proved beyond a reasonable doubt in order to sustain a conviction for crime of violence.[5] Under these circumstances, there is no reasonable possibility that the jury considered the enhancement factors in light of any standard of proof other than that of proof beyond a reasonable doubt, and thus the instructions were not plainly erroneous.

### E.

Finally, the defendant challenges his conviction on unrelated grounds including the admission at trial of evidence of other criminal activity and the alleged inconsistency of certain of the verdicts.

The evidence of other crimes came during the direct examination of the police officer who conducted a search of the defendant's home. When asked what was seized in the search the officer replied, "Items of clothing, pair of scissors, evidence of occupancy, to include a cancelled check, item of contraband, and that's it." Defense counsel objected to the reference to the item of contraband and moved to dismiss the charges against the defendant because, in eliciting the officer's testimony, the prosecution deliberately engaged in conduct calling for a mistrial. The court denied the motion to dismiss. The defendant contends that the district court erred by refusing to declare a mistrial and also by failing to make a finding concerning the motivation behind the reference to the "item of contraband."

We assume for purposes of discussion that the reference to contraband qualifies as evidence of a crime other than the crimes for which the defendant was on trial. In *People v. Goldsberry*, 181 Colo. 406, 409, 509 P.2d 801, 802 (1973), this court stated that "[w]hen reference is made in the presence of the jury to [unrelated] criminal activity, a mistrial is normally required." *Goldsberry*, however, did not displace the general rule that a trial court's determination whether or not to grant a mistrial will not be disturbed absent an abuse of discretion. Where inadmissible evidence of other crimes is brought to the attention of the jury, the factors relevant to the exercise of discretion to declare a mistrial include the nature of the inadmissible evidence, the weight of admissible evidence of guilt, and the value of a cautionary instruction.

In *Goldsberry*, 181 Colo. at 410, 509 P.2d at 803, a prosecution for receiving stolen goods, the court found highly prejudicial a statement by a prosecution witness that the defendant had planned "to go to Texas to make an investment in some drugs." 181 Colo. at 408, 509 P.2d at 802. The potential prejudicial impact of the fleeting and ambiguous reference here to "contraband" is far more difficult to dis-

---

**5.** The full text of the crime of violence instruction is as follows:

A person commits the crime of Violent Crime as charged in Count Two if:

He uses or possesses and threatens the use of a deadly weapon during the commission of the crime of First Degree Sexual Assault or during the immediate flight therefrom.

The elements of Violent Crime are therefore:

(1) Using or possessing and threatening the use of;

(2) A deadly weapon;

(3) During the commission of the crime of First Degree Sexual Assault or the immediate flight therefrom.

If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant, VINCENT SCOTT VIGIL, without affirmative defense, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the Information, you should find the defendant guilty of Violent Crime; if you do not so find, you should find the defendant not guilty of Violent Crime.

cern. Also, in *Goldsberry* the court observed that the proof of the defendant's guilt was "thin." 181 Colo. at 409, 509 P.2d at 803. In this case, by contrast, the evidence of the defendant's guilt is substantial. There is little reason to assume that the jury's verdict was influenced to any significant extent by the jury's exposure to the challenged testimony. In addition the district court made an offer, declined by defense counsel, to instruct the jury to disregard the forbidden words. Considering the relevant circumstances, we conclude that the district court did not abuse its discretion in refusing to grant a mistrial.

The defendant further asserts that his conviction of first degree sexual assault as a class 2 felony must be reversed because of an inconsistency between the verdict on the sexual assault count and the verdict on the crime of violence in connection with second degree assault. The jury found that the defendant did not commit a crime of violence by causing serious bodily injury to the victim during the second degree assault.[6] However, the jury found that the victim sustained serious bodily injury during the first degree sexual assault. As the district court noted in addressing the issue, the jury also found that the defendant used a deadly weapon while committing first degree sexual assault. This factor alone sustains the conviction of first degree sexual assault as a class 2 felony. § 18–3–402(2)(c), 8 C.R.S. (1978).

We conclude that the defendant has not presented any instance of error at his trial requiring reversal. Accordingly, his conviction of first degree sexual assault as a class 2 felony is affirmed.

## II.

The defendant was convicted of a crime of violence under section 16–11–309, 8 C.R.S. (1985 Supp.). This statute defines a crime of violence to include "a crime in which the defendant used, or possessed and

threatened the use of, a deadly weapon during the commission of ... sexual assault." § 16–11–309(2)(a)(I). The crime of violence statute is a sentencing provision: a conviction under the statute requires a judge to impose a sentence in accordance with section 18–1–105(9)(a)(I), 8 C.R.S. (1985) "to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized for the punishment" of the underlying offense, in this case more than 12 years but not more than 24 years for first degree sexual assault.

The defendant contends that because the use of a deadly weapon raises first degree sexual assault from a class 3 to a class 2 felony under section 18–3–402(2)(c), 8 C.R.S. (1978), basing a conviction of a crime of violence and a sentence in the aggravated range on the same factor violates state and federal constitutional guarantees of equal protection and due process as well as state and federal constitutional prohibitions against double jeopardy. This is the argument that we recently rejected in *People v. Haymaker*, 716 P.2d 110 (Colo.1986), and on the basis of that opinion, we uphold the defendant's sentence to a term in the range of more than 12 years but not more than 24 years for first degree sexual assault.

## III.

The final issue raised by the defendant concerns the appropriateness of the twenty-four year sentence imposed by the district court. The defendant argues that the court's decision to sentence him to the maximum term allowed under the law was unwarranted by the circumstances of the case.

Sentencing is an exercise of a trial court's discretion that is to be guided by consideration of a number of factors including the need to protect the public from further criminal activity, the potential deterrent effect of the sentence, the reha-

---

**6.** A "crime of violence" is defined by section 16–11–309(2)(a)(I) to include a first or second degree assault in which "the defendant caused serious bodily injury or death to any person, other than himself or another participant...."

bilitative needs and potential of the defendant, and the severity of the sentence in relation to sentences imposed for similar crimes. *Rocha v. People,* 713 P.2d 350 (Colo.1986); *People v. Moody,* 630 P.2d 74 (Colo.1981). The broad discretion accorded a trial court in sentencing follows from recognition that the trial court, because of its familiarity with the facts of the case, is in the best position to fix a sentence that reflects a balance of the relevant considerations. *Rocha v. People,* 713 P.2d at 352; *People v. Watkins,* 200 Colo. 163, 613 P.2d 633 (1980). On review of a sentencing decision, an appellate court must determine whether the sentence is consistent with the nature of the offense, the character of the offender, and the public interest in safety and deterrence. *Rocha v. People,* 713 P.2d at 353; *People v. Valencia,* 630 P.2d 85 (Colo.1981); *People v. Martinez,* 628 P.2d 608 (Colo.1981). While sentences for lengthy terms are to be examined with special care, lengthy sentences will not be disturbed on appeal if supported by the record. *Rocha v. People,* 713 P.2d at 353. Finally, it is clear from an examination of the cases that while the sentencing judge's discretion is not without limits, only in truly exceptional situations will this court substitute its judgment as to an appropriate sentence for the judgment of the trial court.

The defendant contends that the district court placed undue emphasis on the nature and severity of the crime to the total exclusion of other relevant considerations, particularly his criminal history and prospects for rehabilitation. The defendant refers to extensive testimony by friends and relatives about his nonviolent character. He also points out that although information that the defendant had been implicated in other sexual assaults was before the district court, the court explicitly disclaimed taking this information into account in reaching its sentencing decision.

█ From the transcript of the sentencing hearing it is apparent that the court was aware of the factors to be weighed in setting the defendant's sentence. The court stated:

In deciding what sentence the Court should impose, the Court must take into consideration a number of factors. One of the factors is the seriousness of the offense, another factor is protection of society, another factor is rehabilitation of the defendant. The Court must keep in mind at all times the rights of victims. The Court must consider the issue of punishment for the offense, and the Court must consider deterrence of others. ... When I have considered all of the factors in this case, the one thing that is undeniably true is that this was a vicious crime, a sexual assault in the first degree in which the victim was strangled until she passed out, then her jaw was broken when she passed out. ... The Court is of the opinion that, considering all of the factors that I have recited, that this is a case in which the maximum penalty the legislature has seen fit to allow the judge to give should be given.

In view of these statements, it would be difficult to say that the district court did not give proper consideration to a full range of relevant factors. However, even assuming that the overriding element in the court's decision was the nature of the offense, the circumstances of the crime alone may justify the imposition of a lengthy sentence, even a sentence approaching the statutory maximum. *See People v. Strong,* 190 Colo. 189, 544 P.2d 966, 967 (1976).

█ The defendant attaches special significance to the fact that the sentence imposed here, in addition to being a long one, was the absolute maximum sentence that the court could have imposed. It is true that the imposition of a maximum sentence is a strong statement about the severity of the circumstances of the offense for which the sentence was imposed. However, a trial court is not constrained from imposing the maximum sentence merely because it is possible to find specific instances of arguably more egregious con-

duct in the commission of the same type of offense.

The judgment of the district court is affirmed.

VOLLACK, J., does not participate.