PEOPLE v BETANCOURT

Docket No. 56427. Submitted June 8, 1982, at Grand Rapids.—Decided October 5, 1982. Leave to appeal denied, 417 Mich 874.

Jesse Betancourt was convicted of delivery of heroin and conspiracy to deliver heroin, Saginaw Circuit Court, Hazen R. Armstrong, J. Defendant appeals, alleging that the four-month delay between the commission of the offense and his arrest denied him of due process of law, that the conspiracy charge violated Wharton's Rule and the prohibition against double jeopardy, and that admission of evidence of a subsequent delivery of heroin as a "similar act" was erroneous and more prejudicial than probative. *Held:*

1. The delay in the arrest of defendant was adequately explained by the ongoing nature of an undercover narcotics investigation. There was no evidence of bad faith conduct designed to prejudice the defendant.

2. The conspiracy charge was not precluded by the prohibition against double jeopardy.

3. The conspiracy charge did not violate Wharton's Rule. Because delivery of a controlled substance does not necessarily require the cooperative acts of more than one person, Wharton's Rule does not preclude a charge of conspiracy to deliver a controlled substance in addition to a charge of delivery of a controlled substance.

4. The only justification for admission of the similar-act testimony was to prove the identity of the defendant. The circumstances of the two deliveries, while similar, were not so substantially alike as to necessarily suggest the employment of a special, peculiar, or unique method so distinctive as to mark the person involved in both deliveries as the same person. The evidence was, therefore, improperly admitted. Moreover, the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 5 Am Jur 2d, Arrest §§ 33, 77.

[4, 5] 16 Am Jur 2d, Conspiracy § 6.

[6, 7] 29 Am Jur 2d, Evidence §§ 322-326.

Admissibility, at trial of criminal case, of evidence of defendant's criminal acts other than those charged—Supreme Court cases.

prejudicial effect of the similar-act evidence substantially outweighed its probative value.

Reversed.

1. ARREST — DELAY IN ARREST — DUE PROCESS.

A delay between the commission of an offense and the arrest of a defendant is permissible and not the basis for a finding of a lack of due process, even where some prejudice is shown, if it is shown that (1) the delay is explainable, (2) the delay is not deliberate, and (3) no undue prejudice attaches to the defendant.

2. ARREST — DELAY IN ARREST — ONGOING INVESTIGATION.

The ongoing nature of an undercover investigation is an adequate explanation for a delay between the commission of an offense and the arrest of the defendant.

3. ARREST — DELAY IN ARREST — DELIBERATE DELAY.

A delay between the commission of an offense and the arrest of a defendant is "deliberate" only where there is evidence of bad faith conduct designed to prejudice the defendant.

4. CONSPIRACY — WHARTON'S RULE — NATURE OF OFFENSE.

Application of Wharton's Rule, that an agreement to commit an offense necessarily involving the cooperative action of two or more persons cannot be prosecuted as a conspiracy where the only parties to the agreement are those whose cooperative action is required to commit the substantive offense, requires focus on the nature of the substantive offense or its elements rather than on the particular factual setting of a case, and the rule forecloses a conspiracy charge if an agreement between the essential participants is already implicit in the definition of the substantive offense.

5. CONTROLLED SUBSTANCES — CONSPIRACY — DELIVERY OF HEROIN — WHARTON'S RULE.

The definition of delivery of heroin does not imply an agreement between two culpable actors nor is there a requirement of a willing or culpable transferee of the controlled substance; therefore, because the statute defining delivery of heroin does not necessarily require the cooperative acts of more than one person, Wharton's Rule does not apply to preclude a charge of conspiracy to deliver heroin in addition to a charge of delivery of heroin (MCL 333.7105[1], 333.7401[1], 333.7403[1]; MSA 14.15[7105][1], 14.15[7401][1], 14.15[7403][1]).

6. EVIDENCE — CRIMINAL LAW — SIMILAR ACTS.

Evidence of a defendant's other, similar, uncharged misconduct may be admitted only where (1) there is substantial evidence that the defendant actually committed the bad act, evidence of which is sought to be introduced, (2) there is some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan, system, opportunity, preparation or knowledge in doing the act, (3) one or more of these factors is material to the determination of the defendant's guilt of the charged offense, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice (MRE 404[b]).

7. EVIDENCE — CRIMINAL LAW — SIMILAR ACTS — IDENTITY OF PERPETRATOR.

Where the only conceivable justification for admission of similar-acts evidence is to prove the identity of the perpetrator, admission of the evidence of the separate offense is justified only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

*Dwan & Schmidt, P.C.* (by *Kenneth W. Schmidt),* for defendant on appeal.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

D. F. WALSH, P.J. Defendant, Jesse Betancourt, was convicted of delivery of less than 50 grams of heroin, MCL 333.7401 subds (1), 2(a)(iv); MSA 14.15(7401) subds (1), (2)(a)(iv), and conspiracy to deliver heroin, MCL 750.157a(a); MSA 28.354(1)(a). He was sentenced to concurrent prison terms of 6 to 20 years.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

The charges arose out of a June 14, 1979, incident. Defendant was not arrested until October 10, 1979. Prior to trial, he moved to dismiss the charges due to the four-month delay between the alleged offenses and his arrest. The court denied the motion and defendant challenges that denial on appeal.

At the evidentiary hearing on his motion to dismiss, defendant testified that he could not remember what he had done on June 14, 1979, but that he thought his friend Jesse Vela had come to his house on June 13 or June 14. At that time, Mr. Vela had agreed to take part in defendant's daughter's wedding. Vela told defendant that he was staying at a farm near Breckenridge. But the farm was empty when defendant tried to find Vela 2-1/2 weeks later and defendant had not seen Vela since his June visit. Defendant also testified that he had never driven the Blazer, the vehicle identified as driven by him at the time of the June 14 delivery. He had given the Blazer to his wife and children. He was unable to recall where the vehicle had been or who had used it on June 14.

Michigan State Police Detective Sergeant Andy Palmer also testified at the pretrial hearing. In 1979, Palmer was an undercover agent assigned to the narcotics unit of the intelligence section of the Department of State Police. From January, 1979, until October 10, 1979, he participated in a narcotics investigation in the Flint and Saginaw areas. According to Palmer, the Flint and Saginaw investigations were inextricably linked since "there were suspects that were floating between the two areas". The first undercover Saginaw purchase was

made on June 12. Defendant was not arrested on June 14 because the Saginaw phase of the investigation had just begun, because there was a possibility of future contacts with other suspects, and because of the ongoing Flint investigation.

The court denied defendant's motion to dismiss, finding that the delay in arrest was due to the ongoing investigation, that the delay was not deliberate, and that defendant had not suffered undue prejudice.

On appeal defendant challenges the findings of the trial court and claims that the four-month delay in arrest deprived him of due process of law.

In ruling on defendant's motion, the trial court applied the test enunciated in *People v Hernandez,* 15 Mich App 141, 147; 170 NW2d 851 (1968).

"'* * * where *some* prejudice [due to delay between offense and arrest] is shown, as it is shown in this case, it can be permitted and not be the basis for a finding of lack of due process only where the following elements are present and shown clearly and convincingly to the trier of fact: (1) when the delay is explainable, (2) when it is not deliberate, (3) where no *undue* prejudice attaches to the defendant.''

The trial court's findings were not clearly erroneous. A delay in arrest due to the ongoing nature of an undercover narcotics investigation is adequately explained for due process purposes. *People v White,* 59 Mich App 164; 229 NW2d 357 (1975); *People v Anderson,* 88 Mich App 513; 276 NW2d 924 (1979); *People v Bisard,* 114 Mich App 784; 319 NW2d 670 (1982). A delay is "deliberate" only when there is evidence of bad faith conduct de-

signed to prejudice the defendant; such evidence was not presented in this case. *People v White, supra; People v Bisard, supra.* Finally, defendant's uncertain, self-serving testimony was not alone sufficient to indicate undue prejudice. Compare *People v Hernandez, supra; People v Bisard, supra.* See *United States v Lovasco,* 431 US 783; 97 S Ct 2044; 52 L Ed 2d 752 (1977); *People v Lawson,* 67 Ill 2d 449; 10 Ill Dec 478; 367 NE2d 1244 (1977). Since under the strict test of *People v Hernandez, supra,* defendant was not denied due process, *a fortiori* there was no error under the more flexible, balancing test enunciated in *People v Bisard, supra.*

## II

Defendant also filed a pretrial motion to dismiss the conspiracy charge, claiming violation of Wharton's Rule and of the constitutional prohibition against double jeopardy. The court denied the motion.

It was the prosecution theory that defendant had conspired with Jo Ann Doyle to deliver heroin and that with Doyle's help he had delivered heroin to undercover officer Palmer.

On appeal defendant renews his challenges to the conspiracy charge. Defendant's double jeopardy argument has been rejected by this Court. *People v Gonzales,* 86 Mich App 166; 272 NW2d 227 (1978), *modified on other grounds* 406 Mich 943 (1979); *People v Flores,* 89 Mich App 687; 282 NW2d 183 (1979), *rev'd on other grounds* 407 Mich 871 (1979).

Nor are we persuaded that defendant's conspir-

acy conviction violated Wharton's Rule, recently described by Justice LEVIN as:

"A principle of substantive criminal law that an agreement to commit an offense necessarily involving the cooperative action of two or more persons cannot be prosecuted as conspiracy, at least where the only parties to the agreement are those whose cooperative action is required to commit the substantive target offense which is the object of the conspiracy." *People v Davis,* 408 Mich 255, 280; 290 NW2d 366 (1980) (opinion of Justice LEVIN).

See also *United States v Previte,* 648 F2d 73, 76 (CA 1, 1981). ("It applies when the substantive offense is of a sort that necessarily requires the active, or culpable, participation of the same two people for its successful completion.")

Determination of the applicability of the rule requires focus on the nature of the target offense or the elements of the crime rather than on the particular factual setting of a case. *People v Davis, supra,* p 285, fn 6; *Iannelli v United States,* 420 US 770, 780; 95 S Ct 1284; 43 L Ed 2d 616 (1975). If an "agreement between the essential participants [in the target offense] is already implicit in the definition of the target offense", the rule forecloses a conspiracy charge. *People v Davis, supra,* 311 (opinion of Justice LEVIN). The target offense must require concerted criminal activity. *Iannelli v United States,* 420 US 785. Also see *United States v Previte, supra,* 77, fn 1.

The definition of delivery of heroin does not imply an agreement between two culpable actors. As statutorily defined, "delivery" includes "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship".

MCL 333.7105(1); MSA 14.15(7105)(1). There is no requirement, implicit or otherwise, of an agreement. Nor is there a requirement of a willing or culpable transferee of the controlled substance. The law does not punish bare receipt of a controlled substance; possession with intent to deliver, or knowing or intentional possession, must be proven to support a conviction for possession. MCL 333.7401(1); MSA 14.15(7401)(1), MCL 333.7403(1); MSA 14.15(7403)(1). *A fortiori,* the intended transferee of an attempted transfer of a controlled substance is not necessarily criminally liable. The statute upon which defendant's "target conviction" was based simply "does not necessarily require the cooperative acts of more than one person", and Wharton's Rule does not apply. *People v Cyr,* 113 Mich App 213, 221; 317 NW2d 857 (1982); *People v Davis, supra,* p 280 (opinion of Justice LEVIN).[1]

## III

Relying on MCL 768.27; MSA 28.1050, the so-called "similar acts" statute, the prosecutor sought the court's permission to introduce evidence of an October 10, 1979, drug transaction involving defendant. The prosecutor argued that the evidence was relevant to defendant's "plan, motive and scheme,

---

[1] In *People v Clifton,* 70 Mich App 65; 245 NW2d 175 (1976), this Court relied on Wharton's Rule in reversing the defendant's plea-based conviction of conspiracy to deliver heroin. Although the defendant had been charged with conspiracy with another person to deliver heroin to a third person, the facts established that the defendant had "conspired" to effectuate a delivery of heroin from himself to his "co-conspirator". The Court held that the plea-taking judge had not elicited an adequate factual basis for the guilty plea.

The *Clifton* Court's analysis differs significantly from ours in that the Court in that case focused on the particular factual setting of the case instead of on the statutory elements of the target offense. Even under the *Clifton* analysis, however, there was no violation of Wharton's Rule in the instant case since defendant was alleged to have conspired with Doyle to deliver heroin to Palmer. See *id.,* p 69, fn 2.

*modus operandi,* so to speak, in the way this transaction took place". Defense counsel argued that the prejudicial effect of the evidence would outweigh its probative effect. Without specifying the issue to which the proffered evidence was relevant or commenting on its materiality, the court ruled that the evidence was admissible, finding that its probative value outweighed its prejudicial effect. In support of its ruling the court cited *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976); *People v Nieves,* 92 Mich App 613; 285 NW2d 389 (1979), and *People v Bates,* 94 Mich App 568; 288 NW2d 655 (1980), *lv den* 408 Mich 933 (1980). Before and after introduction of evidence of the October 10 incident, the court cautioned the jury that the evidence was relevant only to defendant's motive, intent, scheme, plan, system, or identity. In closing instructions, all of these purposes except motive were mentioned by the court. In his rebuttal argument to the jury the prosecutor stated that the evidence was relevant to defendant's intent, identity, scheme, plan, or method. On appeal defendant again challenges the admission of evidence of the October 10 incident.

At trial, undercover officer Palmer testified that he contacted Jo Ann Doyle on June 14, 1979, and made arrangements to meet her at her trailer in a Buena Vista trailer park. When he arrived, she told him that she would have to call "Jesse". She handed the phone receiver to Palmer as she dialed a number listed in a directory lying open on her dining room table. Palmer saw "Jesse B." and two telephone numbers, a long distance number and a local one, written in the open directory. Doyle dialed the local number. A man answered the phone and told Palmer he was Jesse. Palmer handed the receiver to Doyle, who said to Jesse,

"We'd like to meet you." She asked Palmer how much he wanted and he responded, "a half a quarter". After she clarified Palmer's meaning, she told Jesse, "a 225 bag".[2] After Doyle hung up the phone, Palmer asked her why Jesse had sounded "asleep or something". She told him Jesse had just had his tonsils out. (This fact was verified by other evidence and admitted by the defense.)

Palmer and Doyle drove to the corner of Genesee and Hoyt in Saginaw and parked in a parking lot. A short while later, a red and white GMC Blazer pulled into the lot. Palmer saw that a Mexican male was driving the Blazer. Following Doyle's instructions, Palmer looked away from the Blazer as Doyle left Palmer's car with Palmer's $225 and walked to the Blazer. When she returned, she handed Palmer a plastic baggie containing a powder later determined to contain heroin. They returned to the trailer park, where Palmer gave Doyle some of the powder as payment for her role in the drug transaction.

Two surveillance officers also testified at trial and identified defendant as the driver of the Blazer involved in the June 14 transaction. It was also determined that defendant was the registered owner of the Blazer.

In accordance with the trial court's "similar acts" ruling, Palmer further testified that he returned to Doyle's trailer on October 10, 1979, this time to try to purchase cocaine. Using the same directory she'd used on June 14, Doyle made a long distance phone call and asked to speak with Jesse Betancourt. Again, price and quantity were

---

[2] A half quarter, according to Palmer, is one-eighth of an ounce. A 225 bag is a quantity of heroin worth $225.

discussed. It was decided that Palmer would pay
$235 for not quite a half quarter. When Doyle
hung up the phone, she told Palmer that Jesse
would call back when he returned to town from
Merrill. A few hours later, the phone rang, Doyle
answered and said, "Okay, meet you down there."
They drove to the same area where the June
delivery had been made. After a few minutes,
Palmer saw defendant drive up in a Lincoln Conti-
nental Mark IV. With Palmer's $240 Doyle went
over to defendant's car and, upon returning,
handed Palmer a plastic baggie containing a pow-
der later determined to contain heroin.

The surveillance officers who had observed de-
fendant on June 14 also participated in the Octo-
ber 10 incident. Both Doyle and defendant were
arrested minutes after the October delivery.

In addition to testimonial evidence of the Octo-
ber 10 incident, there was physical evidence con-
sisting of some of the marked money Palmer had
given Doyle on that day, photocopies of $600 in
marked money Palmer had had in his possession
before giving the $240 to Doyle, and the drugs
received by Palmer on October 10.

MRE 404(b) supplanted the similar-acts statute,
MCL 768.27; MSA 28.1050, and was in effect at the
time of defendant's trial. The rule provides:

"Evidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order
to show that he acted in conformity therewith. It may,
however, be admissible for other purposes, such as proof
of motive, opportunity, intent, preparation, scheme,
plan, or system in doing an act, knowledge, identity, or
absence of mistake or accident when the same is mate-
rial, whether such other crime, wrongs, or acts are

contemporaneous with, or prior or subsequent to the crime charged."

The similar-acts rule is an exception to the general rule of inadmissibility of evidence of a defendant's other crimes. Because of the potential for prejudice inherent in the admission of a defendant's similar uncharged bad acts, a number of evidentiary safeguards must be met before admission:

"Those safeguards, accurately summarized by the Court of Appeals in *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), and adequately supported by citation to precedent from this Court, required at the time of trial that before evidence of the defendant's other misconduct may be admitted: (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice." *People v Golochowicz,* 413 Mich 298, 308-309; 319 NW2d 518 (1982) (footnote omitted).

Applying the first of these safeguards to the instant case, we find that there was substantial evidence that defendant delivered heroin to Palmer, via Doyle, on October 10, 1979.

We proceed next to consideration of the third safeguard. As in *People v Golochowicz, supra,* the only conceivable justification for admission of evi-

dence regarding the October 10 incident was to prove the identity of Doyle's June 14 co-perpetrator. *Id.,* 310, 313-318. The identity of the driver of the Blazer on June 14 was genuinely controverted at trial and was, therefore, material to the determination of defendant's guilt of the charged offense. *Id.,* 315-316.

Turning now to the second safeguard, we are further guided by the Supreme Court's discussion in *People v Golochowicz,* 310-311:

"Where, as in this case, the only conceivable justification for admission of such similar-acts evidence is to prove the identity of the perpetrator, the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are '[s]o nearly identical in method as to earmark [the charged offense] as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The [commonality of circumstances] must be so unusual and distinctive as to be like a signature.' McCormick, Evidence (2d ed), § 190, p 449."[3]

In this case, we must determine whether common circumstances of the commission of the June 14 and October 10 deliveries were so uniquely distinguishing as to be like a signature. The relevant similarities between the two deliveries were: (1) heroin was delivered on both occasions; (2) Doyle set up both deliveries and did so by phone;

[3] See, also, *People v Major,* 407 Mich 394, 398-399; 285 NW2d 660 (1979):

"It is the distinguishing characteristics which constitute the acts as similar within the meaning of MCL 768.27 and MRE 404(b), not the fact that all constitute the same crime or are violative of the same statute. The distinguishing, peculiar or special characteristics which are common to the acts and thus personalize them are said to be the defendant's 'signature' which identifies him as the perpetrator * * *."

(3) the same Saginaw street corner was the scene of both deliveries; (4) in both instances, Palmer stayed in his car while Doyle walked to defendant's car to exchange Palmer's money for the drugs; (5) Palmer received approximately the same quantity of powder and paid approximately the same price in each instance; (6) the powder was contained in a plastic baggie each time.[4]

Admittedly the similarities just recited present us with a close question. We are not persuaded, however, that the circumstances of the two deliveries "necessarily [suggest] the employment of a special, peculiar, or unique method so distinctive as to mark" Doyle's accomplice in the June 14 and October 10 incidents as the same person. *People v Golochowicz, supra,* p 321. In our judgment, therefore, admission of the evidence was not permissible under the court rule.

Even assuming the requisite similarity, however, we would nevertheless conclude that admission of the evidence of the October 10 delivery was reversibly erroneous because the prejudicial effect of the evidence substantially outweighed its probative value. Compare *People v Benon,* 413 Mich 530; 321 NW2d 372 (1982). This conclusion is compelled by the presumptive inadmissibility of evidence of other crimes for the purpose of proving identity, *People v Golochowicz, supra,* p 326, and by consideration of the following factors.[5]

A substantial portion of the direct and redirect testimony of the prosecution's main witness was devoted to presentation of the circumstances surrounding the October 10 incident. The same was

---

[4] Because our concern must be with discerning *defendant's* "signature", we do not attach significance to the peculiarities of Doyle's conduct except as they relate to defendant's involvement. *Cf. People v Duncan,* 402 Mich 1, 11; 260 NW2d 58 (1977).

[5] See *People v Oliphant, supra,* p 490.

true of the surveillance officers' testimony. Five of the prosecution's 13 trial exhibits concerned only the October 10 transaction. Despite the court's cautionary instructions, an uninformed observer could have easily concluded that defendant was being tried for both deliveries.

In addition, there was testimony by two prosecution witnesses who observed the June 14 transaction and who unequivocally identified defendant as the driver of the Blazer, defendant's vehicle, on that day. One of the surveillance officers had seen defendant several times before June 14. Insofar as it was probative of identity, therefore, the similar-acts evidence was cumulative.

We conclude that under the facts of this case the trial court's cautionary instructions did not eradicate the prejudice which resulted from the introduction of the evidence concerning the October 10 drug delivery. "We conclude that the practical effect of disclosing the [subsequent] controlled substance transaction to the jury was to raise the possibility that the jury might conclude that because the defendant [delivered a controlled substance on October 10], he must have done it on the occasion for which he was charged." *People v Rustin,* 406 Mich 527, 533; 280 NW2d 448 (1979).

We have considered the remaining issues raised by defendant on appeal and find no further reversible error. Because admission of evidence of the October 10 drug delivery was erroneous and prejudicial, we reverse defendant's conviction. Defendant is entitled to a new trial free of the October 10 evidence.

Reversed.