**George I. VIGIL, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 85SC118.**

Supreme Court of Colorado,
En Banc.

Jan. 20, 1987.

Rehearing Denied Feb. 17, 1987.

David F. Vela, State Public Defender, Duane M. Kline III and Frances Smylie Brown, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for respondent.

VOLLACK, Justice.

We granted certiorari review of the court of appeals' unpublished decision, *Vigil v. People*, No. 82CA1204 (January 24, 1985), to determine whether the court of appeals erred in holding that the evidence that the defendant knowingly received stolen property was so overwhelming that the admission of evidence of a conspiracy, which was stricken by the trial court because the People failed to establish that the defendant was a participant, was cured by a cautionary instruction to the jury to disregard the inadmissible evidence. We affirm.

I.

The defendant, George I. Vigil, was convicted by a jury of conspiracy for the sale of narcotic drugs, sale of narcotic drugs and theft by receiving. During the trial, the jury heard testimony from a paid informant and several undercover police officers about drug transactions that allegedly oc-

curred on January 29, February 18, March 3, and March 5, 1981. The March 3 transaction formed the basis for the theft by receiving charge. The court suppressed evidence of drugs recovered during the March 5 transaction because of a break in the chain of custody. At the conclusion of the trial, the court instructed the jury that it should disregard the evidence relating to the drug transactions which allegedly occurred on January 29 and February 18. The instruction read:

> The Court has now stricken from the record all evidence presented regarding transactions and events that occurred on January 29, 1981 and February 18, 1981. You are not to consider that evidence for any purpose whatsoever. Such evidence is to be treated as if you had never heard it.

The court struck the evidence from the record and gave the instruction stated above because the People failed to adequately connect the defendant to the January and February transactions.

The evidence pertaining to the theft by receiving conviction included testimony of Mario Castro, a paid informer, who testified that during the afternoon of March 3, he drove to the home of John Cisneros, an alleged co-conspirator, with a new, boxed television set that had been provided him by the police department. Castro and Cisneros drove to Vigil's grocery store, and Castro waited in the car while Cisneros entered the store. Two or three minutes later, he emerged from the store and told Castro he could only acquire one and a half balloons of heroin, rather than two balloons for the television. Castro agreed, and both men took the television into the store. When they handed the television to the defendant, Castro testified:

> I told Mr. Vigil prior to Tom picking [sic] it up that he had to, you know, be careful with it because it was stolen. I didn't want him to keep it around the store. He [defendant] informed me it was already gone.

Subsequently, the defendant passed something to Cisneros. Cisneros immediately

handed Castro a balloon, which was later determined to contain heroin. The defendant then asked Castro if he had more "goodies or stolen items." Castro testified that he told the defendant that he "had approximately three T.V.'s and another stereo." Castro also testified that the defendant told him that "he would get ahold of John to take care of all the details and set the thing up."

Officers Patrick Fitzgibbons and Joseph Garcia of the Denver Police Department corroborated the informant's account of the March 3 transaction. They purchased the new television for $280 and handed it to Castro, and, just prior to the transaction, Officer Garcia searched Castro's person and discovered no contraband. Both officers then followed Castro, and another man whom Castro picked up on the way (Cisneros), to Vigil's grocery store at 2801 Champa Street in Denver, Colorado. They witnessed Cisneros enter the store alone and then return to the car in which he and Castro had traveled. Castro and Cisneros then both entered the store; Castro carried the television. Approximately five to eight minutes later, both men exited the store and drove away in the car. The officers followed Castro and witnessed him drop off Cisneros and then drive to a parking lot some distance away from where he left Cisneros. Castro handed the officers the balloon of substance which later proved to be heroin.

The defendant presented an alibi defense. Three witnesses, Marie O'Donnell and her grandson, Anthony Roybal, testified that they went to Boulder with the defendant on March 3 to see Hanna Kroger, an "herb healer." Kroger testified that the defendant, a woman, and a young boy had come to see her in her home on a Tuesday afternoon. On cross-examination, Kroger admitted that she did not know the exact date or even the month of their visit, that earlier she had told an investigator that the three had arrived at her home in the morning, and that, in talking to the investigator, she had confused the Tuesday visit with another day when the defendant had accompanied a couple with an infant to her home. The court took judicial notice that March 3, 1981, was a Tuesday.

The jury deliberated two hours before returning guilty verdicts on the three counts.

The court of appeals reversed the convictions for sale and conspiracy to sell drugs, remanded for a new trial on these charges, and affirmed the conviction of theft by receiving. It held that the defendant had been prejudiced by references to drug transactions that were never tied to the defendant. However, it held that the evidence of theft by receiving was overwhelming, and it affirmed the jury verdict as to that charge. We affirm.

II.

The theft by receiving statute under which the defendant was charged states in pertinent part:

(1) Except as provided in subsection (6) of this section, a person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

. . . .

(4) Where the value of the thing involved is two hundred dollars or more but less than ten thousand dollars, theft by receiving is a class 4 felony.

§ 18–4–410(1) and (4), 8 C.R.S. (1978).[1]

Each element of the defendant's theft by receiving conviction was supported by the record. Specifically, the record reflects that the defendant, George I. Vigil, in the State of Colorado, on March 3, 1981, at 2801 Champa, City and County of Denver, received a television set which had been purchased by the Denver Police Department for $280, full retail price being $299.

1. Section 18–4–410, 8 C.R.S. (1978), has since been amended so that the two hundred dollar minimum amount is now three hundred dollars. § 18–4–410, 8B C.R.S. (1986).

When the defendant was told the television was stolen, he responded that it was already gone and that he was interested in other stolen items. Independent police corroboration supported the informant's view of this transaction. The jury was in the sole position to determine the credibility to be placed upon the testimony of the informant and the three alibi witnesses. *People v. Franklin*, 645 P.2d 1 (Colo.1982); *People v. Noga*, 196 Colo. 478, 586 P.2d 1002 (1978).

Rather than attack the evidence which pertained to the theft by receiving charge, the defendant contends that because evidence of drug transactions involving persons associated with him was elicited at trial, notwithstanding the court's subsequent instruction excluding any such evidence from the jury's consideration, it was impossible for the jury to render an unbiased verdict. We disagree.

■ Generally, an error in the admission of evidence may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it. *Brown v. United States*, 380 F.2d 477 (10th Cir.1967), *cert. denied*, 390 U.S. 962, 88 S.Ct. 1062, 19 L.Ed.2d 1158 (1968); *Maestas v. United States*, 341 F.2d 493 (10th Cir. 1965); *Johnson v. People*, 80 Pac. 133, 33 Colo. 224 (1905). However, in *People v. Goldsberry*, 181 Colo. 406, 410, 509 P.2d 801, 803 (1973), "where the evidence of guilt was not overwhelming," we held that a new trial was required when the admission of improper evidence was so prejudicial that "it [was] conceivable that but for its exposure, the jury [might] not have found the defendant guilty."

■ Here, the evidence of guilt was overwhelming. Moreover, the stricken evidence related to prior instances of drug transactions, not to prior instances of theft by receiving. Finally, the trial court's curative instruction was clear, unambiguously mandating that the jury not consider for any purpose the testimony pertaining to the transactions and events that occurred on January 29 and February 18, 1981. Because of the overwhelming evidence against the defendant as to the crime of theft by receiving, we hold the trial court's curative instruction, which withdrew certain evidence from the jury's consideration and directed the jury in strong and definite language to disregard that evidence, was sufficient to insure that the jury render an unbiased verdict.

Judgment affirmed.

DUBOFSKY, J., does not participate.

LOHR, J., dissents.

QUINN, C.J., joins in the dissent.

LOHR, Justice, dissenting:

The majority concludes that the evidence pertaining to the theft by receiving charge was overwhelming, and therefore any error committed in the admission of evidence relating to other transactions allegedly involving the defendant was cured by the instruction given to the jury at the close of the evidence to disregard that evidence. I disagree with the analysis employed by the majority as well as the result it reaches, and I therefore dissent. I am persuaded that the evidence presented relating to other transactions allegedly involving the defendant was so prejudicial that it could not be cured by instructing the jury to disregard it and, therefore, the defendant was denied his constitutionally protected right to a fair trial.

## I.

Although no defendant is entitled to a perfect trial, each is entitled to a fair trial. *E.g., Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *People v. Lee*, 199 Colo. 301, 302–03, 607 P.2d 998, 999 (1980); *People v. Mills*, 192 Colo. 260, 262, 557 P.2d 1192, 1194 (1976). Encompassed within the right to a fair trial is the defendant's right to have the charges against him resolved only on the basis of relevant and competent evidence. *Cf. Stull v. People*, 140 Colo. 278, 283, 344 P.2d 455, 458 (1959) ("A defendant should be tried only for the offense with which he stands charged.").

It is inevitable that inadmissible evidence will sometimes creep into criminal trials. However, "[n]ot every admission of inadmissible ... evidence can be considered to be reversible error unavoidable through limiting instructions...." *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1627. Our system of criminal justice places great trust in the jury to follow instructions and render a verdict in accordance with those instructions. Therefore, if an error has been committed in the admission of evidence, that error frequently can be cured by instructing the jury to disregard the evidence that was improperly admitted. *People v. Goldsberry*, 181 Colo. 406, 410, 509 P.2d 801, 803 (1973). However, if "such evidence is so prejudicial that the jury will unlikely be able to erase it from their minds" a mistrial should be ordered. *Edmisten v. People*, 176 Colo. 262, 276, 490 P.2d 58, 64 (1971); *see also Throckmorton v. Holt*, 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663 (1901) ("[T]here may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission...."); *People v. Goldsberry*, 181 Colo. at 410, 509 P.2d at 803. As the United States Supreme Court said in *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Accord People v. Goldsberry*, 181 Colo. at 410, 509 P.2d at 803.

## II.

The majority reasons that the curative instruction was sufficient to ensure that the jury render an unbiased verdict as to the theft by receiving charge because, in its view, the evidence relating to that charge was overwhelming. Maj. op. at 716. I disagree that the curative instruction was adequate to assure an unbiased verdict, and also cannot agree that the evidence as to theft by receiving was overwhelming.

## A.

In *People v. Vigil*, 718 P.2d 496 (Colo. 1986), we held that the weight of the admissible evidence is but one factor to consider in determining whether a mistrial is required in cases such as the one here. In that case we said:

Where inadmissible evidence of other crimes is brought to the attention of the jury, the factors relevant to the exercise of discretion to declare a mistrial include the nature of the inadmissible evidence, the weight of the admissible evidence of guilt, and the value of a cautionary instruction.

*Id.* at 505. *See also State v. Thompson*, 342 S.E.2d 268, 274–75 (W.Va.1986) (even if admissible evidence is sufficient to convict, prejudicial effect on jury of improperly admitted evidence must also be considered).[1]

The nature of the inadmissible evidence that the jury was instructed to disregard was such that it created an impression of continual criminal activity revolving around the defendant and his grocery store. The prosecution presented extensive evidence of three irrelevant drug transactions which

1. I believe that the majority misreads *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973), when it cites that case for the proposition that overwhelming evidence of guilt removes the possibility that stricken evidence could be so prejudicial that a jury could not render an unbiased verdict. *See* maj. op. at 716. In that case we held that a cautionary instruction to disregard highly prejudicial and inadmissible testimony did not alleviate the need to declare a mistrial since the admissible evidence of guilt was not overwhelming and the proof of at least one of the elements of the offense was entirely circumstantial. *Id.* at 409–10, 509 P.2d at 803. Without overwhelming evidence of guilt such an error in the admission of evidence could not be harmless. However, even if the admissible evidence is overwhelming, that does not necessarily mean that a substantial right of the defendant has not been affected. Evidence may be so highly prejudicial that a jury will be unable to render an unbiased verdict. *See People v. Vigil*, 718 P.2d at 505–06; *State v. Thompson*, 342 S.E.2d at 274–75.

allegedly occurred in the vicinity of the defendant's grocery store. According to the evidence, two took place on January 29, 1981, and the other occurred on February 18 of that year. The defendant himself was frequently mentioned as having some connection with those transactions. Evidence of a fourth transaction occurring on January 29, the same date as two other transactions, was also introduced, but no effort was made to connect the defendant or his store to this transaction. Indeed, the evidence reveals no conceivable connection. After all of the evidence in the trial had been presented to the jury, the trial judge ruled that all of the testimony and physical evidence introduced with regard to those four transactions had failed to establish a significant connection between the defendant and those transactions.[2] For example, the testimony pertaining to two transactions on January 29 established only that an alleged coconspirator had twice entered the defendant's grocery store and returned with heroin. None of the witnesses testified as to how the defendant himself was involved in these two transactions and none of them testified as to having seen the defendant on that date. Witnesses also gave details of a third transaction occurring at the same alleged coconspirator's house on that date, but no connection at all was established between that event and the defendant or his store. Furthermore, the testimony pertaining to the transaction allegedly occurring on February 18 estab-

lished only that an alleged coconspirator had entered the defendant's grocery store twice on that date, had returned to a police officer's car, was subsequently driven to a bar, and showed the officer heroin after returning from the bar. There was no testimony that the alleged coconspirator had purchased the heroin from the defendant or at the defendant's store.

The practical effect of the improper admission of this evidence was to raise the possibility—or even the likelihood—that the jury might conclude that because the defendant and his grocery store had been, or may have been, involved in other narcotics transactions, he must have exchanged the narcotics for the television set as charged. *Cf. Salas v. People,* 177 Colo. 264, 493 P.2d 1356 (1972) (witness' statements that the defendant had been convicted by another jury of same offense for which he was being retried raised possibility that jury's decision could have been improperly affected; prejudice not cured by instruction to disregard statements); *Drott v. People,* 71 Colo. 383, 206 Pac. 797 (1922) (improper introduction of evidence consisting of saddle and wagon box found in defendant's house which victim testified were his was prejudicial since there was no evidence of when or from where saddle and wagon box were taken from victim's possession; instruction telling jury to disregard saddle and wagon box insufficient to cure prejudice where charges related to theft of other

---

2. The defendant's counsel made numerous objections to the admission of testimony concerning the events of January 29, February 18, and March 5. At the pretrial hearing to determine if there was sufficient independent evidence to support the conspiracy charge, defendant's counsel objected to the possible introduction, at trial, of testimony and evidence relating to transactions that took place on January 29 and February 18. The trial judge ruled that such evidence would be admissible at trial if the prosecution could adequately tie the defendant to those transactions. At trial, defendant's counsel objected to the introduction of testimony and evidence relating to these transactions on several occasions outside the presence of the jury. The trial judge eventually agreed with defense counsel that the People had failed to connect the defendant to the transactions of January 29 and February 18 and at the conclu-

sion of the People's case the court dismissed the charges relating to those dates. Because of a fatal defect in the chain of custody, the court also suppressed evidence of heroin obtained in a fifth transaction, which occurred on March 5, and ruled that all of the testimony as to where and from whom the heroin was obtained should be excluded from consideration by the jury. Testimony that the confidential informant and the defendant allegedly discussed the sale of heroin on that date appears to have survived the court's ruling. In short, the defendant's counsel repeatedly objected to the admission of the evidence that was eventually stricken on the basis that it was immaterial and prejudicial. But it was only after the People had presented all of their evidence, had rested their case, and the defendant had presented his case that the jury was instructed to disregard the improperly received evidence.

items); *People v. Rustin,* 406 Mich. 527, 280 N.W.2d 448 (1979) (testimony concerning prior delivery of heroin could have caused jury to conclude that defendant delivered heroin on the occasion charged; curative instruction insufficient to remove prejudice); *State v. Danielson,* 377 N.W.2d 59 (Minn.Ct.App.1985) (videotape containing allegations of several other unrelated crimes prejudicial; effect on jury not cured by instruction).

### B.

I also disagree with the majority's conclusion that the admissible evidence concerning the theft by receiving charge is overwhelming. The sole evidence connecting the defendant to the transaction of March 3 is the testimony of the paid informant who took the television set into the defendant's grocery store. On the other hand, two alibi witnesses testified that they were with the defendant in Boulder at the time the defendant was alleged to have accepted the television set from the paid informant. A third alibi witness testified that she was also with the defendant on a Tuesday sometime around the day of the alleged crime although she could not remember the precise date. None of the police officers who were involved in the operation of March 3 observed the defendant at any time on that date. There was therefore a serious conflict in the evidence. Although the credibility of witnesses is a matter left exclusively to the jury, *People v. Franklin,* 645 P.2d 1, 4 (Colo.1982), it is likely that the evidence presented relating to the other four alleged drug transactions affected that determination. The stricken evidence tended to bolster the paid informant's credibility and created an impression of criminality surrounding the defendant and his grocery store. Viewed in this

light, I do not believe that it can fairly be said that the admissible evidence pertaining to the theft by receiving charge was overwhelming.[3]

### C.

In the context of this case I do not believe that the curative instruction was sufficient to ensure that the defendant would not be prejudiced by the stricken evidence. The instruction was not given until the end of trial when the other jury instructions were given. The jury had a substantial amount of time in which to consider and evaluate the evidence and to make subjective judgments concerning that evidence. Furthermore, the stricken evidence comprised a substantial portion of the evidence presented at the trial. More than half of the testimony elicited as part of the People's case was stricken. Even accounting for testimony elicited as part of the defendant's case, well over forty percent of the testimony elicited at trial was stricken. It is expecting too much from jurors to require them to erase so much evidence from their minds, especially where that evidence was highly prejudicial in its content. *Cf. Salas v. People,* 177 Colo. 264, 493 P.2d 1356; *Drott v. People,* 71 Colo. 383, 206 Pac. 797; *People v. Betancourt,* 120 Mich. App. 58, 327 N.W.2d 390 (1982) (substantial portion of testimony related to irrelevant transaction; prejudicial effect on jury could not be cured by instruction).

In sum, I believe that the curative instruction was insufficient to cure the prejudice to the defendant caused by the admission of the evidence pertaining to the four other transactions with which he was allegedly involved. I would therefore reverse the defendant's conviction for theft by re-

---

**3.** The court of appeals held that the evidence pertaining to the convictions for sale of narcotic drugs and conspiracy to sell narcotic drugs was not overwhelming but held that the evidence as to the theft by receiving conviction was overwhelming. I do not believe that this result can be squared with the record. The evidence as to all three charges was identical. To find on one hand that this evidence was insufficient to find that the defendant had exchanged the television set for the heroin but on the other hand that it was sufficient to convict him of receiving the television set believing it to be stolen is incongruous under the record in this case. The evidence pertaining to the theft by receiving charge is simply no more extensive or persuasive than it is as to the sale and conspiracy charges.

ceiving and remand for a new trial on that charge.

I am authorized to say that Chief Justice QUINN joins in this dissent.